[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 04-12466
Non-Argument Calendar

_____

D.C. Docket No. 03-14043-CR-DMM

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 16, 2005
THOMAS K. KAHN
CLERK

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

KENNETH E. MORRISON,

Defendant-Appellant.

_____

Appeal from the United States District Court for the
Southern District of Florida

_____

(June 16, 2005)

Before ANDERSON, HULL and WILSON, Circuit Judges.

PER CURIAM:

Kenneth E. Morrison appeals his conviction and sentence for conspiracy to

commit money laundering in violation of 18 U.S.C. § 1956(h). On appeal, he

challenges (1) the district court's admission of evidence of his fiancee's occupation as a nightclub dancer; (2) the district court's failure to include an "overt act" element in the jury instructions; and (3) the district court's denial of his request for a minor role reduction. We affirm the district court's decision.

I.

Morrison argues that the admission of his fiancee's occupation on cross-examination by the government was highly inflammatory, irrelevant, and prejudicial because there exists a reasonable likelihood that the evidence affected his right to a fair trial. He asserts that the admission was not harmless error because his substantial rights were affected. He suggests that the admission of the evidence diminished his credibility and enhanced the credibility of the government's witness, upon which the government's case was based.

"We review a district court's ruling on admission of evidence under the abuse of discretion standard." United States v. Maragh, 174 F.3d 1202, 1204 (11th Cir. 1999). "Limitations on the scope and extent of cross-examination are matters expressly committed to the sound discretion of the trial judge and we review such decisions only for a clear abuse of discretion." United States v. Matthews, 168 F.3d 1234, 1244 (11th Cir. 1999).

To successfully challenge a verdict on the basis of a district court's incorrect evidentiary ruling, a party must follow a three-step process. First, he must demonstrate either that his claim was adequately preserved or that the ruling constituted plain error. Second, he must establish that the district court abused its discretion in interpreting or applying an evidentiary rule. Finally, he must establish that this error affected a substantial right.

United States v. Stephens, 365 F.3d 967, 974 (11th Cir. 2004) (citations and quotations omitted). "[A]n erroneous evidentiary ruling is a basis for reversal [and substantial rights are violated] only if the defendant can demonstrate that the error probably had a 'substantial influence' on the jury's verdict." Id. at 977. "This standard requires that the error be subject to a 'harmless error' analysis." Id. at 976 n.11. "This circuit has found even prejudicial nonconstitutional error harmless in criminal cases in which the government has presented highly convincing, admissible evidence of a defendant's guilt, such as . . . audiotapes or videotapes of the defendant engaging in or discussing the alleged criminal activity . . ." United States v. Hands, 184 F.3d 1322, 1329 (11th Cir. 1999) (citations omitted).

In United States v. Granville, we held that the district court did not abuse its discretion by admitting evidence of Granville's religion on cross-examination, noting that (1) it was doubtful whether Granville suffered any significant harm because the questions were a brief, isolated part of a four-day trial, the prosecutor never again referred to Granville's religion, Granville's answers were not necessarily unfavorable

to him, and evidence of guilt was overwhelming; and (2) "any possible prejudice might have been cured by a cautionary instruction[, and] Granville cannot now complain [] because his counsel, perhaps with good reason, requested that none be given." 716 F.2d 819, 820-21 (11th Cir. 1983).

Morrison's contention fails for several reasons. First, it was Morrison, on direct examination, who first brought up his fiancee's presence at Morrison's meeting with the prosecutor, making the prosecutor's cross-examination regarding the fiancee proper. Second, the record demonstrates that the prosecutor did not refer to the fiancee's occupation after the cross-examination. Third, Morrison has not shown how evidence of the occupation significantly harmed or was unfavorable to him. Finally, Morrison did not request a curative jury instruction. The district court did not abuse its discretion by admitting evidence regarding Morrion's fiancee's occupation.

## II.

Morrison argues that the district court plainly erred by omitting the "overt act" element in its jury instruction for conspiracy to commit money laundering because the omission deprived him of a fair trial. At the time Morrison filed his briefs, the Supreme Court had granted certiorari review of United States v. Hall, 349 F.3d 1320, 1321 (11th Cir. 2003)(holding "that proof of an overt act is not an essential element

4

under § 1956(h)"), but had not yet issued its opinion.  Morrison understandably sought to preserve the issue in the event <u>Hall</u> was reversed.  Because <u>Hall </u>was affirmed <u>sub nom. Whitfield v. United States</u>, __ U.S. __, 125 S.Ct. 687 (2005), we now can say with certainty that the district court did not err, plainly or otherwise, by omitting the "overt act" element from the jury instructions for conspiracy to commit money laundering.  <u>Id.</u> at __, 125 S.Ct. at 694.

III.

Morrison argues that the district court clearly erred by failing to grant him a minor role reduction.  He submits that he did not participate in any act of money laundering and withdrew from the conspiracy before any money changed hands.  He contends that the district court did not measure his role against the relevant conduct attributed to him in calculating his base offense level, and, had it done so, it should have awarded him a minor role reduction.  He further asserts that he played a minor role in comparison to his codefendants, which the district court failed to consider.

"[A] district court's determination of a defendant's role in the offense is a finding of fact to be reviewed only for clear error." <u>United States v. De Varon</u>, 175 F.3d 930, 937 (11th Cir. 1999) (<u>en banc</u>).  "[T]he ultimate determination of role in the offense is also a fundamentally factual determination entitled to due deference and not a legal conclusion subject to <u>de novo</u> review." <u>Id.</u> at 938.  The defendant has the

burden of establishing his minor role by a preponderance of the evidence. Id. at 939.

 "[A] party is not required to reargue a general objection made after sentencing if the argument in support of that objection has previously been presented to the sentencing court and the reasons for the objection remain clear after the sentence is pronounced." United States v. Maurice, 69 F.3d 1553, 1557 (11th Cir. 1995).

The Sentencing Guidelines permit a two-point decrease of a defendant's offense level if the court finds the defendant was a "minor participant" in the crime. U.S.S.G § 3B1.2(b). To determine whether a mitigating role reduction is warranted, a district court "should be informed by two principles discerned from the Guidelines: first, the defendant's role in the relevant conduct for which [he] has been held accountable at sentencing, and, second, [his] role as compared to that of other participants in [his] relevant conduct." De Varon, 175 F.3d at 940. In looking to relevant conduct, "the district court must assess whether the defendant is a minor or minimal participant in relation to the relevant conduct attributed to the defendant in calculating [his] base offense level." Id. at 941. "In making the ultimate determination of the defendant's role in the offense, the sentencing judge has no duty to make any specific subsidiary factual findings." Id. at 939. "So long as the basis of the trial court's decision is supported by the record and does not involve a misapplication of a rule of law, we believe that it will be rare for an appellate court

6

to conclude that the sentencing court's determination is clearly erroneous." Id. at 945 (emphasis in original).

In essence, Morrison argues that his role was minor because he withdrew from the conspiracy prior to commiting any overt act. Morrison emphasizes that it was the codefendants who picked up and processed the payments. At trial, Morrison contended that he withdrew from the conspiracy at the latest when he missed the first scheduled pick-up. After he missed the pick-up, Morrison told the other participants in the scheme that he had "gotten lost". At trial, Morrison argued that he had not gotten lost and that he did not attend because he had decided to withdraw from the conspiracy. Morrison played no role in subsequent laundering transactions.

The district court did not err by denying Morrison a minor role reduction.[1] Morrison initiated the conspiracy in his conversations with an informant, introduced a codefendant to an undercover agent, and took part in extensive discussions with the agent regarding how the laundering scheme would operate. Although Morrison's codefendants ultimately laundered almost $500,000 and Morrison's conduct appears minor compared to theirs, Morrison was not held accountable for the money actually laundered, but rather only for his substantial role regarding the first transaction. As

---

[1] The government's contention that Morrison waived any objection to the district court's articulation of reasons for denial of a minor role reduction is without merit. Morrison objected in writing and orally.

the district court noted, Morrison's attempt to argue at sentencing that he missed the first pick-up because he had withdrawn from the conspiracy (and not because he got lost, as he claimed at the time) is merely an attempt to revisit the merits determination at the sentencing phase. The district court did not clearly err by denying Morrison a minor role reduction.

**AFFIRMED.**